UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER HARBERS,<br><br>               Plaintiff,<br>  v.<br><br>EDDIE BAUER, LLC, et al.,<br><br>               Defendants. | CASE NO. C19-1012JLR<br><br>ORDER COMPELLING ARBITRATION |

**I. INTRODUCTION**

This matter comes before the court on Defendant Eddie Bauer, LLC's ("Eddie Bauer") motion to compel arbitration, or in the alternative, dismiss Plaintiff Jennifer Harbers' complaint under Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. # 13).) Ms. Harbers filed a response. (Resp. (Dkt. # 19).) Eddie Bauer filed a reply. (Reply

//

//

(Dkt. # 25).[1]) For the reasons set forth below, the court GRANTS Eddie Bauer's motion to compel arbitration and DECLINES to rule on Eddie Bauer's motion to dismiss.

## II. BACKGROUND

This putative class action revolves around Ms. Harbers' allegations that Eddie Bauer engaged in "false discount advertising" by advertising "perpetual or near perpetual discounts" but "rarely if ever offer[ing] its products at the advertised list prices." (Compl. (Dkt. # 1-2) ¶¶ 4-5.) Ms. Harbers filed her complaint in King County Superior Court on May 28, 2019, on behalf of herself and the putative class. (*See id.* at 25.) Eddie Bauer removed this case to federal court on June 28, 2019. (Not. of Removal (Dkt. # 1).) Ms. Harbers alleges violations of the Washington Consumer Protection Act ("CPA") and seeks both money damages and injunctive relief. (*See* Compl. ¶¶ 75-95.)

Ms. Harbers alleges that she made "numerous purchases from Eddie Bauer over the years, primarily through the Eddie Bauer website (www.eddiebauer.com)." (*Id.* ¶ 16.) Her complaint provides one example: a pair of "Women's Myriad Crop Pants" that she purchased through eddiebauer.com "on or about June 20, 2016." (*See id.* ¶ 17-18.) Ms. Harbers does not specify the dates of other purchases or allege they took place during the putative class period. (*See generally id.*) Eddie Bauer's records show that Ms. Harbers made two online purchases during the class period: the pair of crop pants discussed

//

---

[1] Eddie Bauer requests oral argument (*see* Mot. at 1), and Ms. Harbers "takes no position on" whether the court should hold oral argument (*see* Resp. at 9 n.1). The court finds oral argument would not be helpful to the disposition of the motion, and therefore declines to hold oral argument. *See* Local Civil Rules W.D. Wash. LCR 7(b)(4).

above on June 19, 2016, and a second purchase on September 12, 2017. (*See* Mot. at 10 (citing McMurdo Decl. (Dkt. # 14) ¶ 4).)

Eddie Bauer contends that "[i]t would have been impossible for [Ms. Harbers] to make either of her two online purchases without proceeding" through a "Begin Secure Checkout" page ("Checkout Page") that states: "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use." (*See id.* at 10-11.) Eddie Bauer provides an image of that page, as well as an image of an additional "Review" page ("Review Page") that Eddie Bauer began using in 2017, which states "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use." (*See id.*) The Review Page makes the foregoing statement twice—once on the top left of the page, and again just above the "Submit Order" button at the bottom of the page. (*See id.*)

Eddie Bauer asks the court to take judicial notice of an archived copy of the Terms of Use as they existed on eddiebauer.com as of May 12, 2016, procured through the Internet Archive. (*See* RJN (Dkt. # 15) at 1-2; *id.*, Ex. A ("Terms of Use").) According to James McMurdo, Senior Developer for Eddie Bauer, "[t]his page accurately reflects how the Terms of Use on eddiebauer.com appeared at the time of Plaintiff's June 12, 2016, and September 12, 2017, purchases." (McMurdo Decl. ¶ 12.)

The Terms of Use include in relevant part the following arbitration agreement:

> Our first objective is to satisfy our customers, and so we hope to never have a dispute with you. But if we can't avoid a dispute, you and we agree to try for 60 days to resolve it by agreement. You and we further agree that if we can't resolve our dispute by agreement within 60 days, we will submit adjudication of our dispute to binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"). You and we agree that a neutral arbitrator will adjudicate our

> dispute and the arbitrator's decision will be final except for a limited right of appeal under the FAA.
>
> You and we agree to give up our rights to sue in court and have our dispute decided by a judge or jury.
>
> However, we agree that if your claim is small enough that the law allows you to file it in a small claims court, you may do so instead of submitting to binding arbitration. We will submit to binding arbitration in any event.
>
> You also agree to waive—that is, to give up—your right to claim through a class action lawsuit, class-wide arbitration, private attorney-general action, or any other proceeding where someone acts in a representative capacity or individual claims are combined.
>
> * * *
>
> You accept this Binding Arbitration Agreement and Class Action Waiver by your purchase or use of the produces, or services that we sell you (including by becoming an Eddie Bauer Friends member). You agree to abide by these terms without modification. We reserve the right to change terms from time to time.

(Terms of Use at 4.) The Terms of Use do not expressly delegate to an arbitrator the determinations of whether an arbitration agreement exists or whether it covers a particular dispute. (*See id.*)

Ms. Harbers contends that she made no agreement to arbitrate with Eddie Bauer. (*See* Resp. at 18.) She opposes Eddie Bauer's request for judicial notice of the Terms of Use on the grounds that the Internet Archive is not a source whose reliability cannot reasonably be questioned, and because the Terms of Use image is not authenticated by a person with knowledge who works for the Internet Archive. (*See id.* at 14-19.) Ms. Harbers further contends that a customer can bypass the Checkout Page if "(1) the customer is using PayPal; (2) the customer is paying using Visa Checkout; or (3) the

customer or the computer is already logged in as an Eddie Bauer registered user." (*See* Resp. at 19 (citing Corrington Decl. (Dkt. # 21) ¶ 9-12; Bannister Decl. (Dkt. # 20) ¶¶ 23-28).[2])

Ms. Harbers asserts that she "definitely used PayPal to pay for her Eddie Bauer purchase of 2017" and provides a screenshot of what she claims is her PayPal receipt for that purchase. (Resp. at 19 (citing Harbers Decl. (Dkt. # 19) ¶ 6, Ex. B.) Ms. Harbers does not dispute that she would have had to move through the Review Page and click "Submit Order" to make her 2017 purchase. (*See generally id.*)

### III. ANALYSIS

**A.  Surreply**

As an initial matter, Ms. Harbers filed a notice of intent to file a surreply and the corresponding surreply on July 31, 2019. (Surreply (Dkt. # 27).) Ms. Harbers asks the court to strike what Ms. Harbers describes as a "profoundly misleading portion of Footnote Six" of Eddie Bauer's reply brief. (Surreply at 2 (citing Reply at 12 n.6).) Footnote six discusses *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 152 (E.D.N.Y. 2015). *Nicosia* is not necessary to the outcome of Eddie Bauer's motions, and although Ms. Harbers may disagree with Eddie Bauer's interpretation of the case, it is not "profoundly misleading" in a manner that requires the court to strike it.

//

//

---

[2] Ms. Harbers acknowledges that she "and her representatives cannot confirm without discovery with 100% certainty whether all three of these bypass routes existed when Ms. Harbers purchased from the Eddie Bauer website in June 2016 or September 2017." (*See* Resp. at 24.)

Ms. Harbers also asks the court to strike "the declarations of Deserae Weitmann . . . and Karen Ressmeyer" that Eddie Bauer apparently retrieved from the dockets of two other cases as "improper, new evidence being introduced on Reply." (Surreply at 3 (citing Brooks Decl. (Dkt. # 26) ¶¶ 2-3, Exs. A (Weitmann Decl.), B (Ressmeyer Decl.)).) Eddie Bauer submits these declarations to buttress its argument that Ms. Harbers ignored the cases Eddie Bauer cited in its affirmative motion "that have enforced arbitration clauses based on similar disclosures." (*See* Reply at 6; *see also* Mot. at 8 (citing *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1074 (S.D. Cal. 2015)), 18, 21 (citing *Wisely v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017)).) The declarations describe and authenticate images of Amazon.com's "Review your order" page, which contains disclosure language that is similar to that in Eddie Bauer's Review Page in substance, color, size, and placement. (*See* Brooks Decl. ¶¶ 2-3, Exs. A-B.) Eddie Bauer's arguments that are supported by these declarations are set forth fully in its motion, and the Amazon.com review pages at issue are described in detail in the underlying cases Eddie Bauer cites in its motion. (*See* Mot. at 8, 18, 21.) Therefore, the declarations at issue are not "new evidence" that could prejudice Ms. Harbers. Accordingly, the court denies Ms. Harbers' motions to strike contained in her surreply.

**B.     Standard for Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflect[s] both a liberal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and must enforce them according to their terms." *Id.* (internal quotation marks and citations omitted).

Section 4 of the FAA provides a judicial remedy where a party seeks to compel another party to arbitrate a dispute. *See* 9 U.S.C. § 4. Under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties," for an order compelling arbitration. *Id.*

On a motion to compel arbitration, the court's role under the FAA is generally "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1075 (N.D. Cal. 2015). "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

As the party seeking to compel arbitration, Eddie Bauer bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."

*See Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id.* (quoting *AT&T Techs., Inc*, 475 U.S. at 648) (alteration in original). In analyzing the parties' arguments about contract formation, the court applies "ordinary state-law principles that govern the formation of contracts" to decide whether an agreement to arbitrate exists. *See id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

**C.      Eddie Bauer's Terms of Use**

Eddie Bauer contends that Ms. Harbers formed an agreement to arbitrate three times: twice when making her purchases after viewing the Checkout Page, which states, "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use," and once when she made her 2017 purchase by clicking the "Submit Order" button on the Review Page, which includes the same disclosure language and a hyperlink to the Terms of Use. (*See* Mot. at 11-12.) Before turning to whether Ms. Harbers is bound by the Terms of Use, the court addresses Ms. Harbers' contention that Eddie Bauer has not presented sufficient evidence of the existence of the Terms of Use in the first place. (*See Resp.* at 7-10.)

To meet its burden to prove the existence of a valid agreement to arbitrate, Eddie Bauer asks the court to take judicial notice of a screenshot of the Terms of Use from the Internet Archive, commonly referred to as the Wayback Machine. (*See* RJN at 2-3; *id.*, Ex. A.) "The court may judicially notice a fact that is not subject to reasonable dispute

because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Eddie Bauer also presents an authenticating declaration from Mr. McMurdo, who declares:

> I have reviewed a copy of the Terms of Use pulled from the Wayback Machine, available at https://web.archive.org/web/20160512142709/http://www.eddiebauer.com:80/company-info/company-info-terms-of-use.jsp, which I understand is attached to Eddie Bauer's Request for Judicial Notice as Exhibit A. This page accurately reflects how the Terms of Use on eddiebauer.com appeared at the time of Plaintiff's June 12, 2016 and September 12, 2017 purchases.

(McMurdo Decl. ¶ 12.)

Eddie Bauer cites a number of cases in which courts "have taken judicial notice of the contents of web pages available only through internet archives, including the Wayback Machine, as facts that can be accurately and readily determined from sources whose accuracy cannot be questioned." (RJN at 2.) In response, Ms. Harbers argues that the screenshots at issue are "not sufficiently reliable," that the Wayback Machine "itself disclaims any guarantee that the results it produces are accurate," and that the screenshots "reveal[] many flaws and contradictions which place into question the authenticity of the Terms of Use which were displayed on the Eddie Bauer website." (Resp. at 14-15.) Ms. Harbers also contends that to be admissible, Eddie Bauer "must, at a minimum, 'provide the Court with a statement or affidavit from an Internet Archive representative with *personal knowledge* of the contents of the Internet Archive website.'" (Resp. at 17 (quoting *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006)).) In reply, Eddie Bauer contends that the Internet Archive screenshots are authenticated in a manner sufficient for judicial notice through

the declaration of Mr. McMurdo, and that Ms. Harbers' counsel "relied on the Internet Archive in a similar pricing case just months ago." (Reply at 13-14 (citing McMurdo Decl. ¶ 12).)

In the face of Mr. McMurdo's declaration authenticating the Terms of Use, the court finds it unnecessary to resolve Eddie Bauer's request for judicial notice at this time,[3] and therefore declines to rule on Eddie Bauer's request.[4] "The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses." Fed. R. Evid. 201 advisory committee's note to proposed rule. Although the court may not consider evidence outside the pleadings unless incorporated by reference or judicially noticed in the context of a motion to

---

[3] Although the court declines to rule on Eddie Bauer's request for judicial notice at this time, the court notes that Ms. Harbers cites no case in which a court declined to take judicial notice of an image from the Internet Archive when a party declaration separately authenticates the document at issue. (*See* Resp. at 14-15 (citing *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017) (denying request for judicial notice where Internet Archive pages showed "nothing more than what appears to be unintelligible computer coding" and where requesting party provided "no expert affidavit or any other explanation or interpretation of these pages"); *My Health, Inc. v. Gen. Elec. Co.*, No. 15-CV-80-JDP, 2015 WL 9474293, at *4 (W.D. Wis. Dec. 28, 2015) (denying request for judicial notice of Internet Archive images where they were not authenticated, but noting that "[i]f properly authenticated and supported with affidavits, [the requesting party] may submit this evidence in support of a motion for summary judgment"); *Nassar v. Nassar*, No. 3:14-CV-1501-J-34MCR, 2017 WL 26859, at *5 (M.D. Fla. Jan. 3, 2017), *aff'd*, 708 F. App'x 615 (11th Cir. 2017) (stating that "[i]n general, non-governmental websites are not proper subjects of judicial notice," but not addressing the impact of an authenticating declaration); *Todd R. v. Premera Blue Cross Blue Shield of Alaska*, No. C17-1041JLR, 2019 WL 1923034, at *4 (W.D. Wash. Apr. 30, 2019) (determining that court would not take judicial notice of a party's website where requesting party failed to submit documents for which it sought judicial notice, and instead "suggested that the court could go 'online' to review additional portions" of the documents at issue).)

[4] The court also declines to rule on Eddie Bauer's request for judicial notice of an order from the California Superior Court (RJN, Ex. B), as it is also unnecessary to the outcome of this motion.

dismiss under Federal Rule of Civil Procedure 12, the court must consider evidence of the existence of an arbitration agreement in the context of a motion to compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130. Mr. McMurdo's declaration adequately authenticates the Terms of Use such that the court may consider it on Eddie Bauer's motion to compel arbitration. *See* Fed. R. Civ. P. 901 ("Testimony of a witness with knowledge" may be used to "authenticat[e] or identify[] an item of evidence.").

Ms. Harbers challenges the reliability of the Internet Archive itself in the context of a request for judicial notice. (*See* Resp. at 14-19.) However, her arguments as to why Mr. McMurdo's declaration is insufficient to authenticate the Terms of Use are unpersuasive. First, Ms. Harbers argues that Mr. McMurdo "does not explain how he has personal knowledge of what Eddie Bauer's Terms of Use actually stated on those days or how he knows that the Terms of Use submitted to the Court exactly match what was on the Eddie Bauer website on those days." (Resp. at 17.) However, Mr. McMurdo's declaration is sufficient to authenticate the Terms of Use. (*See* McMurdo Decl. ¶¶ 1 ("In my position, I have access to Eddie Bauer's . . . records describing the development of www.eddiebauer.com."), 2 ("This declaration is based on my personal knowledge and review of Eddie Bauer's business records.").) Having authenticated the Terms of Use in effect on the date Ms. Harbers made her purchases, it is not necessary for Mr. McMurdo to "describe how the Internet Archive works." (*See* Resp. at 19.)

Ms. Harbers presents no substantive argument or evidence that the Terms of Use were not in effect as of the date she made her purchases. (*See generally* Resp.) Accordingly, the court concludes that Eddie Bauer has met its burden for the purposes of

its motion to compel arbitration to prove by a preponderance of the evidence the Terms of Use that were in effect when Ms. Harbers made her purchases.

**D.  Mutual Assent**

The court next evaluates whether Ms. Harbers manifested assent to the Terms of Use and concludes that she did.  The court applies "ordinary state-law principles that govern the formation of contracts" to decide whether an agreement to arbitrate exists. *See Norcia*, 845 F.3d at 1283 (quoting *First Options of Chi., Inc.*, 514 U.S. at 944). Under Washington law, in order to form a valid contract, the contracting parties must "objectively manifest their mutual assent." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004).  "Generally, manifestations of mutual assent will be expressed by an offer and acceptance." *Id.*

The court first addresses the Review Page because it is dispositive.  The top of the Review Page states: "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use." (*See* McMurdo Decl. ¶ 9.)  On the right-hand side, there is an order summary and a "Submit Order" button.  At the bottom of the screen, the "Submit Order" button appears again, and just above it is the same disclosure regarding the Terms of Use. (*See id.*)  In both locations, the disclosure text is offset in blue and contains a hyperlink to the Terms of Use containing the arbitration agreement. (*See id.*)  Ms. Harbers does not contest that she was required to press one of the two "Submit Order" buttons on the Review Page to complete her 2017 purchase. (*See generally* Resp.)

Nevertheless, Ms. Harbers contends that Eddie Bauer's disclosures amount to an unenforceable "browsewrap" agreement, because "Ms. Harbers did not click or press or

otherwise objectively consent to the Terms," and argues that "her silence cannot be construed as acceptance" under Washington law. (Resp. at 18-19.) Courts in this circuit have described the difference between "browsewrap" and "clickwrap" agreements as follows:

> A clickwrap agreement "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon."

*Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *5 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002)). In contrast:

> Browsewrap agreements are those that purport to bind the users of websites to which the agreements are hyperlinked. Generally, the text of the agreement is found on a separate webpage hyperlinked to the website the user is accessing. The browsewrap agreements are generally entitled 'Terms of Use' or 'Terms of Service.' The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists. . . . In general, courts enforce inconspicuous browsewrap agreements only when there is evidence that the user has actual or constructive notice of the site's terms.

*Id.*, at *6.

In response to Ms. Harbers' argument that the Terms of Use are a browsewrap agreement, Eddie Bauer correctly notes that "[c]ourts reviewing disclosures like Eddie Bauer's have found them to be 'somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else—click ['Submit Secure Order']—to assent to the hyperlinked terms.'" (Reply at 11 (quoting *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829,

838 (S.D.N.Y. 2012)) (alterations in *Fjeta*).) Eddie Bauer contends that Ms. Harbers assented to the Terms of Use whether the Terms of Use are considered a clickwrap agreement or a browsewrap agreement, because "Eddie Bauer provided reasonable notice that Plaintiff's purchase was subject to the Terms." (*Id.*) The court agrees.

Courts in this circuit and others have concluded that disclosures similar to those on Eddie Bauer's Review Page provide customers notice sufficient to manifest mutual assent. *See, e.g.*, *Wiseley*, 709 F. App'x at 864 ("The notices on Amazon's checkout and account registration pages, which alerted Wiseley that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms.") (citing *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 760 (Wash. 2004)) (quoting *Schroeder v. Fageol Motors, Inc.*, 544 P.2d 20, 23-24 (Wash. 1975)); *Tompkins*, 2014 WL 2903752, at *1 ("The fact that the [terms of service] were hyperlinked and not presented on the same screen does not mean that customers lacked adequate notice"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) (enforcing an arbitration clause where the plaintiff "was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button"); *Fjeta*, 841 F. Supp. 2d at 839 (concluding that Facebook's website provided adequate notice of its terms of use because courts have long upheld contracts where "the consumer is prompted to examine terms of sale that are located somewhere else") .

The substance, color, size, and location of the language on Eddie Bauer's Review Page are strikingly similar to those described by the court in *Fagerstrom*, 141 F. Supp. 3d

at 1069. In that case, Amazon.com's "Review your order" page included the disclosure "[b]y placing your order, you agree to Amazon.com's privacy notice and conditions of use" at the top of the page. *Id.* The text there was "somewhat smaller than the text beneath it, but the hyperlink to the [conditions of use] is set off in blue-colored font." *Id.* The *Fagerstrom* court concluded that although the notice "may not dominate the entire checkout page display . . . it is reasonable notice, and that is all that is required." *Id.* (citing *Nicosia*, 84 F. Supp. 3d at 152 (finding that the plaintiff was, at a minimum, on inquiry notice of Amazon's conditions of use in part because of "the conspicuous placement of the hyperlink to the current Conditions of use [at the top of] the checkout page")); *Nguyen v. Barnes Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements.") (all alterations in *Fagerstrom*). The same analysis applies to Eddie Bauer's Review Page.

Ms. Harbers argues that "[b]oth of these Consent Lines [on the Review Page] fail the legal tests for conspicuousness." (Resp. at 25.) Ms. Harbers relies heavily on the declaration of Benjamin Bannister, a graphic artist and design consultant, to argue that the typography and placement of the disclosure renders it inconspicuous. (*See* Resp. at 20-27 (citing Bannister Decl.).) Noticeably absent from her arguments, however, is citation to any Ninth Circuit authority evaluating disclosures similar to Eddie Bauer's. (*See id.*) As discussed above, those cases exist, and the weight of authority runs contrary to Ms. Harbers' arguments.

Ms. Harbers' remaining arguments to avoid the conclusion that she assented to the Terms of use are similarly unavailing. Ms. Harbers declares that at the time she made her purchases, she "did not click a box or button that said that, by clicking, I was agreeing to Eddie Bauer's Terms of Use." (Harbers Decl. ¶ 12.) That statement is incorrect as to Ms. Harbers' 2017 purchase, for which she does not contest she would have had to click the "Submit Order" button on the Review Page. (*See generally* Resp.)

Ms. Harbers also contends that she "did not know that Eddie Bauer had a set of Terms of Use which would apply to my purchases or me," and that she had "never seen or received a copy of Eddie Bauer's Terms of Use." (Harbers Decl. ¶¶ 12, 13.) She also declares that when she made her September 12, 2017, purchase, she "never saw any of the lines of text on the 'Review' page beginning with 'By ordering you agree . . . .'" (*Id.* ¶ 15.) However, unlike the Checkout Page,[5] Ms. Harbers has not raised any authenticity objections to the Review Page, does not present evidence or argument that it did not appear as Eddie Bauer presents it when she made her September 12, 2017, purchase, and

//

//

---

[5] Without citation to authority, Ms. Harbers moves to strike the Checkout Page screen capture for lack of authentication. (Resp. at 22 n.6 (citing McMurdo Decl. ¶ 9).) Ms. Harbers contends that the screenshot is not properly authenticated because Mr. McMurdo "does not explain where the screen capture came from or how he knows with any certainty that this is the version of the 'Begin Secure Checkout' page that Ms. Harbers would have seen." (*Id.*) Ms. Harbers also points out that unlike for a separate screenshot, Mr. McMurdo does not declare that the screen capture for the Checkout Page was reproduced using the code in effect at the relevant time. (*Id.* (citing McMurdo Decl. ¶ 9).) The court is unpersuaded and denies Ms. Harbers' request. The fact that Mr. McMurdo added additional details about the Review Page does not render insufficient his authentication of the Checkout Page. (*See* McMurdo Decl. ¶ 6 ("At the time of Ms. Harbers' June 19, 2016 and September 12, 2017 purchases, the 'Begin Secure Checkout' page appeared as follows . . . . (including screenshot of the Checkout Page).")

does not allege that she was able to bypass the Review Page by using PayPal or other means. (*See generally* Resp.) In effect, Ms. Harbers' argument is that she does not remember viewing the disclosure on the Review Page or clicking the "Submit Order" button. Courts have rejected the argument that there was no mutual assent on the grounds that a party failed to read or fails to remember the terms of a contract. *See, e.g.*, *Tompkins*, 2014 WL 2903752, at *7 (finding that "user access to portions of websites that require indicating assent to be sufficient evidence" that the user clicked the button indicating assent, and thus, the plaintiffs "cannot credibly claim ignorance as to whether they actually clicked the appropriate checkboxes."). This court rejects Ms. Harbers' parallel argument for the same reasons.

Finally, Ms. Harbers makes no argument that the Terms of Use are unconscionable or otherwise unenforceable. (*See generally* Resp.) Therefore, the court concludes that Eddie Bauer has met its burden to show by a preponderance of the evidence that Ms. Harbers assented to the Terms of Use, including the arbitration agreement contained therein, when Ms. Harbers made her September 12, 2017, purchase, and that the arbitration agreement is valid and enforceable.

**E.      Scope of Arbitration Agreement**

Having concluded that Ms. Harbers is bound by the Terms of Use, the court turns to the scope of the arbitration agreement in the Terms of Use as applied to Ms. Harbers' claims. The Terms of Use requires arbitration for any "dispute." (Terms of Use at 4.) Eddie Bauer contends that the arbitration agreement applies to all of Ms. Harbers' claims and encompasses her 2016 purchase. (Reply at 13; Mot. at 12 n.3.) Ms. Harbers offers

no argument in response, and the court agrees with Eddie Bauer. (*See generally* Resp.) The arbitration agreement in the Terms of Use refers to "disputes" generally between the customer and Eddie Bauer, and makes no reference to any specific purchase or sale. (*See* Terms of Use at 4.) As Eddie Bauer correctly notes, courts have applied similar arbitration agreements that lack temporal limitations to disputes involving conduct that occurred before the parties entered into the agreements. *See, e.g.*, *Trujillo v. Gomez*, No. 14CV2483 BTM BGS, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015) ("Courts have rejected arguments that similarly-worded arbitration clauses do not encompass claims because the claims are based on events pre-dating the agreements containing the arbitration clauses."); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007); *MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, L.L.P.*, No. CIV.05 2562 PHX MHM, 2007 WL 951959, at *4 (D. Ariz. Mar. 27, 2007).

All of Ms. Harbers' claims in this litigation are "disputes" between herself and Eddie Bauer and are subject to the arbitration agreement. Accordingly, and for the foregoing reasons, the court GRANTS Eddie Bauer's motion to compel arbitration of all of Ms. Harbers' claims.

**F.     Dismissal**

When a court determines that an arbitration agreement covers a parties' claims, the FAA requires all remaining substantive issues to be decided in arbitration. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). Therefore, the

court DECLINES to rule on Eddie Bauer's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The final question is whether to dismiss or stay this case pending arbitration. Here, Eddie Bauer requests dismissal. (*See* Mot. at 16-17 ("Because Plaintiff repeatedly agreed to Eddie Bauer's arbitration clause and class action waiver, and those terms are enforceable, the Court should compel arbitration and dismiss Plaintiff's case in its entirety.").) Ms. Harbers does not ask the court to stay the case. (*See generally* Resp.) Under Ninth Circuit precedent, the court "may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Because the court finds that arbitration is the proper forum for all of Ms. Harbers' claims, the court dismisses Ms. Harbers' claims in favor of arbitration and without prejudice.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Eddie Bauer's motion to compel arbitration (Dkt. # 13), DECLINES to rule on Eddie Bauer's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. # 13), DENIES Ms. Harbers' motions to strike contained in her surreply (Dkt. # 25), and DISMISSES Ms. Harbers' claims in favor of arbitration and without prejudice. Ms. Harbers is compelled to proceed to

//

//

//

arbitration of her claims in accordance with the terms of the arbitration agreement contained in the Terms of Use (Dkt. # 15, Ex. A).

Dated this 19th day of November, 2019.

JAMES L. ROBART
United States District Judge